JUDGE CARTER

15 CV 00598

**PELTON & ASSOCIATES PC**
Brent E. Pelton (BP 1055)
Taylor B. Graham (TG 9607)
111 Broadway, Suite 1503
New York, NY 10006
Telephone: (212) 385-9700

RECEIVED
JAN 28 2015
U.S.D.C. S.D. N.Y.
CASHIERS

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANTHONY FERNANDEZ, RYAN DIAZ and TRAVIS KING, Individually and on Behalf of All Others Similarly Situated, <br><br>                         **Plaintiffs,** <br><br> -against- <br><br> TRIM RESTAURANT LLC, NICOLO OTTOMANELLI and JOSEPH OTTOMANELLI, Jointly and Severally, <br><br>                         **Defendants.** | **CLASS & COLLECTIVE ACTION COMPLAINT** <br><br> **Jury Trial Demanded** |

       Plaintiffs Anthony Fernandez ("Fernandez"), Ryan Diaz ("Diaz") and Travis King ("King") ("King" and, collectively with Fernandez and Diaz, the "Plaintiffs"), individually and on behalf of all others similarly situated, as class representatives, upon personal knowledge as to themselves and upon information and belief as to other matters, allege as follows:

### NATURE OF THE ACTION

       1.     Plaintiffs worked for Defendants as runners, bussers, food preparers, dishwashers, porters and delivery workers. Plaintiffs bring this action to recover unpaid wages, unpaid minimum wages and overtime premium pay owed to them pursuant to both the Fair Labor

1

Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* and the New York Labor Law ("NYLL"), §§ 650 *et seq.* Plaintiffs also bring claims for unpaid spread-of-hours premiums, for uniform violations and for failure to provide proper wage notices and wage statements pursuant to NYLL §§ 190 *et seq.* and the supporting regulations.

2.      Plaintiffs bring their FLSA claims on behalf of themselves and all other similarly situated employees of Defendants and their NYLL claims on behalf of themselves and a Federal Rule of Civil Procedure 23 class of all runners, bussers, delivery workers, counter workers, servers, cashiers, hosts/hostesses, porters, cooks and dishwashers who worked for Defendants in New York.

**JURISDICTION AND VENUE**

3.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1337, and 1343, and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.  In addition, the Court has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

4.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Defendants' business is located in this district.

5.      This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

**THE PARTIES**

*Plaintiffs*:

6.      Plaintiff Anthony Fernandez was, at all relevant times, an adult individual residing in New York County, New York.

7.      Plaintiff Ryan Diaz was, at all relevant times, an adult individual residing in New

York County, New York.

8.    Plaintiff Travis King was, at all relevant times, an adult individual residing in New York County, New York.

9.    Throughout the relevant time period, Plaintiffs performed work for Defendants at 1325 5th Avenue, New York, NY 10029.

10.    Plaintiffs consent in writing to be parties to this action, pursuant to 29 U.S.C. § 216(b).

*Defendants*:

11.    Upon information and belief, Trim Restaurant, LLC ("Otto's Wine & Burger Bar" or the "Corporate Defendant") is an active New York Corporation doing business as Otto's of New York, a Wine & Burger Bar with its principal place of business at 1325 5th Avenue, New York, NY 10029.

12.    Defendant Nicolo Ottomanelli ("N. Ottomanelli") is an owner and operator of the Corporate Defendant who set the Corporate Defendant's payroll policies, including the unlawful practices complained of herein. Throughout the relevant time period, upon information and belief, N. Ottomanelli was in charge of determining the Corporate Defendant's policies with respect to payroll, and otherwise running the business of the Corporate Defendant.

13.    Defendant Joseph Ottomanelli ("J. Ottomanelli" and, together with N. Ottomanelli, the "Individual Defendants" and, together with the Corporate Defendant, the "Defendants" is an owner and operator of the Corporate Defendant who set the Corporate Defendant's payroll policies, including the unlawful practices complained of herein. Throughout the relevant time period, upon information and belief, J. Ottomanelli was in charge of determining the Corporate Defendant's policies with respect to payroll, and otherwise running

the business of the Corporate Defendant.

14.     The Individual Defendants participated in the day-to-day operations of the Corporate Defendants and acted intentionally in their direction and control of Plaintiffs and the Corporate Defendant's other similarly situated employees, and are "employers" pursuant to the FLSA, 29 U.S.C. § 203(d) and regulations thereunder, 29 C.F.R. § 791.2, as well as the NYLL § 2 and the regulations thereunder, and are jointly and severally liable with the Corporate Defendant.

15.     At all relevant times, Defendants have been and continue to be employers engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a).  At all relevant times, Defendants employed, and/or continue to employ, Plaintiffs and each of the Collective Action members within the meaning of the FLSA.

16.     At all relevant times, Plaintiffs were employed by Defendants within the meaning of the NYLL, §§ 2 and 651.

17.     Upon information and belief, at all relevant times, the Corporate Defendants have had gross revenues in excess of $500,000.00.

18.     At all relevant times, the Corporate Defendants have used goods and materials produced in interstate commerce and have employed two or more individuals who handled these goods and materials.

## <u>COLLECTIVE ACTION ALLEGATIONS</u>

19.     Pursuant to 29 U.S.C. §§ 206, 207 & 216(b), Plaintiffs bring their First and Second Causes of Action as a collective action under the FLSA on behalf of themselves and the following collective:

4

> All persons employed by Defendants at any time since January 26, 2012 and through the entry of judgment in this case (the "Collective Action Period") who worked as runners, bussers, delivery workers, counter workers, servers, cashiers, hosts/hostesses, cooks, porters and dishwashers (the "Collective Action Members").

20.    A collective action is appropriate in this circumstance because Plaintiffs and the Collective Action Members are similarly situated, in that they were all subjected to Defendants' illegal policies of failing to pay wages for all hours worked, failing to pay minimum wage for all hours worked and/or failing to pay overtime premiums for work performed in excess of forty (40) hours each week.   As a result of these policies, Plaintiffs and the Collective Action Members did not receive the legally-required minimum wages for all hours worked and overtime premium payments for all hours worked in excess of forty (40) hours per week.

21.    Plaintiffs and the Collective Action Members have substantially similar job duties and are paid pursuant to a similar, if not the same, payment structure.

## RULE 23 CLASS ALLEGATIONS

22.    Pursuant to the NYLL, Plaintiffs bring their Third through Eighth Causes of Action under Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and the following class:

> All persons employed by Defendants in New York at any time since January 26, 2009 and through the entry of judgment in this case (the "Class Period") who worked as servers, runners, bussers, delivery workers, counter workers, cashiers, hosts/hostesses, cooks, porters and dishwashers (the "Class Members").

23.    The Class Members are readily ascertainable.   The number and identity of the Class Members are determinable from the records of Defendants.   For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants.   Notice can be provided by means permissible under Federal Rule of Civil

Procedure 23.

24.    The Class Members are so numerous that joinder of all members is impracticable.

25.    Upon information and belief, there are well in excess of forty (40) Class Members.

26.    There are questions of law and fact common to the claims of Plaintiffs and the claims of the Class. Such common questions will determine Defendants' liability to all (or nearly all) Class Members. These common questions include whether Defendants had a corporate policy of: failing to pay at least the statutory minimum wage for all hours worked; failing to pay overtime premiums when employees worked in excess of forty (40) hours per week; failing to pay spread-of-hours premiums for days in which employees worked in excess of ten (10) hours or split shifts; failing to provide uniform maintenance pay to Defendants' employees who are required to wear a uniform; failing to purchase or reimburse employees for required uniforms; failing to provide proper wage statements; and failing to provide proper wage notices. The answer to these questions would drive resolution of the litigation. If a judge and/or jury agrees with Plaintiffs on these issues, Defendants would be liable to all Class Members for their NYLL wage and hour violations.

27.    Plaintiffs' claims are typical of the Class Members' claims. Plaintiffs, like all Class Members, are restaurant employees of Defendants who worked for Defendants pursuant to their corporate policies. Plaintiffs, like all Class Members, were, *inter alia*, paid less than the statutory minimum wage for all hours worked, were not paid overtime premium pay for hours worked over forty (40) hours in a given workweek, were not provided spread of hours premiums while working shifts in excess of ten (10) hours, were not reimbursed for the purchase of their required uniforms, were not provided with uniform maintenance pay and did not receive proper

wage statements and wage notices. If Defendants are liable to Plaintiffs for the claims enumerated in this Complaint, they are also liable to all Class Members.

28.    <u>Plaintiffs and their Counsel will fairly and adequately represent the Class</u>. There are no conflicts between Plaintiffs and the Class Members, and Plaintiffs bring this lawsuit out of a desire to help all Class Members, not merely out of a desire to recover their own damages.

29.    Plaintiffs' counsel are experienced class action litigators who are well-prepared to represent the interests of the Class Members.

30.    <u>The questions of law and fact common to the Class predominate over any questions solely affecting the individual members of the Class</u>. These common questions include, but are not limited to:

    a.  whether Defendants employed Plaintiffs and the Class Members within the meaning of the NYLL;

    b.  whether Defendants failed to keep true and accurate time records for all hours worked by Plaintiffs and the Class Members;

    c.  whether Defendants failed and/or refused to pay Plaintiffs and the Class Members wages for all hours worked;

    d.  whether Defendants failed and/or refused to pay Plaintiffs and the Class Members minimum wage for all hours worked;

    e.  whether Defendants failed and/or refused to pay Plaintiffs and the Class Members overtime premiums for hours worked in excess of forty (40) hours per workweek;

    f.  whether Defendants failed to pay Plaintiffs and the Class Members an extra hour of minimum wage when working shifts in excess of ten (10) hours or split shifts;

    g.  whether Defendants failed to provide Plaintiffs and the Class Members with a proper

statement of wages with every wage payment as required by the NYLL;

h.  whether Defendants failed to provide proper wage notice to Plaintiffs and Class Members at the beginning of his employment and/or on February 1 of each year as required by the NYLL;

i.  whether Defendants failed to reimburse Plaintiffs and the Class Members for the cost of their uniforms;

j.  whether Defendants failed to pay Plaintiffs and the Class Members uniform maintenance pay;

k.  whether Defendants' failure to properly pay Plaintiffs and the Class Members lacked a good faith basis; and

l.  whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory damages, liquidated damages, interest, costs and disbursements and attorneys' fees.

31.    A class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendants are sophisticated parties with substantial resources. The individual Plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against corporate defendants. The individual members of the Class have no interest or capacity to bring separate actions; Plaintiffs are unaware of any other litigation concerning this controversy; it is desirable to concentrate the litigation in one case; and there are no likely difficulties that will arise in managing the class action.

## STATEMENT OF FACTS

**Defendants' Restaurants**

32.    At all relevant times, Defendants have been in the food service business.    Upon

information and belief, Defendants currently own, operate and manage restaurants in at least three (3) locations around New York City, including: Otto's Wine & Burger Bar at 1325 5th Avenue, New York, NY 10029; Ottomanelli NY Grill at 1424 Lexington Avenue, New York, NY 10028; and Ottomanelli's 86th Street Café at 1626 York Avenue, New York, NY 10028.

33.    According to the Google Plus Page for Otto's Wine & Burger Bar, Defendants' restaurant is a "[c]asual café-style eatery (part of the Ottomanelli's empire) specializing in steaks & burgers."

34.    According to the Ottomanelli Brothers' website (https://www.nycotto.com), "[s]ince 1917 the company has been a recognized processor, wholesaler, and purveyor of fine quality meats... Today, Co-chairs Nicolo and Joseph Ottomanelli have parlayed this family legacy into meat markets, cafes, packaged goods and bakeries."

35.    Upon information and belief, Defendants' employees "Carl" and "Mike Brown" are the general managers of Otto's Wine & Burger Bar.

36.    Upon information and belief, Defendants N. Ottomanelli and J. Ottomanelli are in constant contact with "Carl," "Mike Brown" and other managers to ensure that the restaurants are operating in accordance with their standards and policies.

**Plaintiffs' Work for Defendants**

37.    Plaintiff Fernandez was employed by Defendants as a runner, busser, dishwasher, delivery person and porter at Otto's Wine & Burger Bar from in or around May 2014 through in or around January 2015 (the "Fernandez Employment Period"). From approximately May 2014 through approximately June 2014, Plaintiff Fernandez worked primarily as a dishwasher. From in or around June 2014 through in or around September 2014, Plaintiff Fernandez worked primarily as a busboy and runner. From in or around September 2014 through in or around

January 2015, Plaintiff Fernandez worked primarily as a dishwasher. Approximately once per month throughout the Fernandez Employment Period, Plaintiff Fernandez worked a four (4) hour overnight porter shift. Throughout the duration of his employment, Plaintiff Fernandez performed delivery and food preparation work in addition to his dishwashing, running and bussing responsibilities.

38.    From in or around May 2014 through in or around June 2014, Plaintiff Fernandez typically worked two consecutive shifts from 10:00 am to 4:00 pm and 4:00 pm to 11:30 pm or 12:00 am five (5) days per week and a single six to six-and-a-half (6-6.5) hour shift one to two (1-2) days per week for a total of approximately sixty-five to eighty (65-80) hours per week. From in or around June 2014 through in or around September 2014, Plaintiff Fernandez typically worked twelve (12) hours per day as a runner and busser from approximately 10:00 am to 10:00 pm six (6) or seven (7) days per week for a total of approximately seventy-two to eighty-four (72-84) hours per week. From approximately September 2014 through in or around December 2014, Plaintiff Fernandez typically worked two consecutive shifts from 10:00 am to 4:00 pm and 4:00 pm to 11:30 pm or 12:00 am five (5) days per week and a single six to six-and-a-half (6-6.5) hour shift one to two (1-2) days per week for a total of approximately sixty-five to eighty (65-80) hours per week. From approximately December 2014 through in or around January 2015, Plaintiff Fernandez typically worked three consecutive shifts of 7:00 am to 12:00 pm, 12:00 pm to 5:00 pm and 5:00 pm to 10:00 pm approximately two to three (2-3) times per week, two consecutive shifts of 7:00 am to 12:00 pm, 12:00 pm to 5:00 pm or 5:00 pm to 10:00 pm approximately two to three (2-3) times per week and a single shift of 7:00 am to 12:00 pm, 12:00 pm to 5:00 pm, 5:00 pm to 10:00 pm or 5:00 pm to 12:00 am approximately once per week for a total of approximately sixty-five to seventy-two (65-72) hours per week. Approximately once

per month throughout the Fernandez Employment Period, Plaintiff Fernandez worked a four (4) hour porter shift from 12:00 am to 4:00 am in addition to his regular shift hours. On days in which Plaintiff Fernandez worked as a porter, he typically worked three consecutive shifts of 12:00 am to 5:00 pm, 5:00 pm to 12:00 am and 12:00 am to 4:00 am. Plaintiff Fernandez worked as a porter on two (2) occasions during December 2014.

39.    From in or around May 2014 through in or around July 2014, Plaintiff Fernandez was paid forty dollars ($40) per shift for his work. From in or around July 2014 through in or around November 2014, Plaintiff Fernandez was paid seven dollars ($7) per hour. Throughout the Fernandez Employment Period, Plaintiff Fernandez was typically paid ten dollars ($10) per hour for all hours worked past 12:00 am. In addition to his regular wages, Plaintiff Fernandez typically earned tips from customers, but he and the other restaurant employees were required to work for well-below minimum wage.

40.    For a period of approximately three (3) weeks in or around May 2014, Plaintiff Fernandez received his wages in check. From in or around June 2014 through in or around January 2015, Plaintiff Fernandez received his wages partially in cash and partially in check. Throughout the Fernandez Employment Period, Plaintiff Fernandez only received forty dollars ($40) per shift or seven dollars ($7) per hour, notwithstanding the fact that he frequently worked over ten (10) hours per day.

41.    Throughout his employment, Plaintiff Fernandez received his regular hourly rate for all hours worked in excess of forty (40) hours per week. Fernandez did not receive overtime premiums of one and one-half (1.5) times his hourly rate for hours worked in excess of forty (40) hours per week.

42.    Plaintiff Fernandez did not receive a proper wage statement with each payment of

wages containing his regular hourly rate of pay; his overtime rate of pay; the number of regular

hours worked; and the number of overtime hours worked.

43.    Defendants did not provide Plaintiff Fernandez with a wage notice on his date of

hire and/or February 1 of each year.

44.    On at least one occasion, Plaintiff Fernandez complained to a manager "Carl"

about not receiving overtime pay. "Carl" responded by telling Fernandez that the restaurant's

management does not follow the New York Labor Law and that he was free to leave at any time.

45.    On one occasion in or around December 30, 2014, manager Mike Brown called

Plaintiff Fernandez into his office and informed Fernandez that he was aware of the impending

lawsuit against Defendants and that it would only take him a couple of weeks to fabricate

Plaintiffs' employment records to make it appear as though Fernandez and the other Plaintiffs

received the proper minimum wage and overtime premiums for their work.

46.    Although Plaintiff Fernandez was permitted to take a thirty (30) minute lunch

break throughout the duration of his employment, he occasionally was denied a full break

because he was interrupted to perform other tasks.

47.    Throughout the Fernandez Employment Period, Plaintiff Fernandez was typically

required to stay thirty to sixty (30-60) minutes past his scheduled shift time to report his

deliveries to a manager, "Carl," wash dishes, clean and replenish soft drink dispensers at the bar

or make deliveries.    Although Plaintiff Fernandez clocked in and out correctly each day,

approximately twenty-five to thirty-five dollars ($25-$35) was missing from his payment each

week. Upon information and belief, Defendants disregarded hours logged by Plaintiff Fernandez

and only compensated him for his scheduled shifts.

48.    On one occasion, Defendants deducted ninety-three dollars ($93) from Plaintiff Fernandez's payment to cover a food delivery ordered with a defective credit card.

49.    Plaintiff Diaz was employed by Defendants as a food preparer, dishwasher and delivery person at Otto's Wine & Burger Bar from in or around May 2013 through in or around November 2013 and from in or around June 2014 through in or around September 2014 (the "Diaz Employment Period").

50.    From in or around May 2013 through in or around November 2013, Plaintiff Diaz typically worked nine to fourteen (9-14) hours per day from 8:00 am to 5:00 pm or 10:00 pm seven (7) days per week for total of approximately sixty-three to one hundred and nineteen (69-119) hours per week.  In June 2014, Plaintiff Diaz typically worked approximately thirteen (13) hours per day from 9:00 am to 10:00 pm seven (7) days per week for a total of approximately ninety-one (91) hours per week.  From in or around July 2014 through in or around September 2014, Plaintiff Diaz typically worked approximately ten to eleven (10-11) hours per day from 10:00 am to 8:00 pm or 9:00 pm approximately two (2) times per week.  Approximately three (3) times per week from in or around July 2014 through in or around September 2014, Plaintiff Diaz worked approximately sixteen (16) hours per day from 10:00 am to 2:00 am for a total of approximately sixty-eight to seventy (68-70) hours per week.

51.    From in or around May 2013 through in or around November 2013 and for approximately one (1) month in June 2014, Plaintiff Diaz was paid forty-five dollars ($45) per shift for his work.  From in or around July 2014, Plaintiff Diaz was paid approximately seven dollars ($7) per hour for his work.  In addition to his regular wages, Plaintiff Diaz typically earned tips from customers, but he and the other restaurant employees were required to work for well-below minimum wage.

52.     From in or around May 2013 through in or around November 2013, Plaintiff Diaz received his wages in cash. From in or around June 2014 through in or around September 2014, Plaintiff Diaz received his wages in check. Throughout the Diaz Employment Period, Plaintiff Diaz only received forty-five ($45) per shift or seven dollars ($7) per hour, notwithstanding the fact that he typically worked over ten (10) hours per day.

53.     Throughout the Diaz Employment Period, Plaintiff Diaz received his regular hourly rate for all hours worked in excess of forty (40) hours per week. Diaz did not receive overtime premiums of one and one-half (1.5) times his hourly rate for hours worked in excess of forty (40) hours per week.

54.     Plaintiff Diaz did not receive a proper wage statement with each payment of wages containing his regular hourly rate of pay; his overtime rate of pay; the number of regular hours worked, and the number of overtime hours worked.

55.     Defendants did not provide Plaintiff Diaz with a wage notice on his date of hire and/or February 1 of each year.

56.     Throughout the Diaz Employment Period, Plaintiff Diaz frequently complained to a manager "Carl" that he was not being paid correctly. "Carl" responded by either telling Plaintiff Diaz that the restaurant was losing money and that employees needed to take a pay cut in order to boost the restaurant's financial health or that he had let manager "Mike Brown" know about the situation and that Plaintiff Diaz was unlikely to be compensated for all hours worked.

57.     Throughout the Diaz Employment Period, Plaintiff Diaz was frequently unable to take a thirty (30) minute lunch break because he was interrupted to perform others tasks.

58.     Although Plaintiff Diaz clocked in and out correctly each day, approximately ten to twelve (10-12) hours were missing from his payment every week.

59.     On at least three (3) occasions, Defendants withheld Plaintiff Diaz's tips when he did not take a credit card swiping machine with him on deliveries.  Plaintiff Diaz was also warned by managers that if a delivery customer attempted to pay for a meal with a defective credit card, the price of the meal would be deducted from his paycheck.

60.     Plaintiff King was employed by Defendants as a dishwasher, delivery person and porter at Otto's Wine & Burger Bar from in or around June 2014 through in or around October 2014 (the "King Employment Period").

61.     From in or around June 2014 through in or around August 2014, Plaintiff King typically worked approximately twelve to thirteen (12-13) hours per day from 10:00 am to 10:00 pm or 11:00 pm seven (7) days per week for a total of approximately eighty-four to ninety-one (84-91) hours per week.  From in or around August 2014 through in or around October 2014, Plaintiff King typically worked twelve to thirteen (12-13) hours per day from 10:00 am to 10:00 pm or 11:00 pm five to seven (5-7) days per week for a total of approximately sixty to ninety-one (60-91) hours per week.  Throughout the King Employment Period, Plaintiff King typically worked two consecutive shifts from 10:00 am to 5:00 pm and 5:00 pm to 10:00 pm.  For approximately two (2) weeks in October 2014, Plaintiff King worked approximately twenty (20) hours per day from 10:00 am to 6:00 am two (2) days per week for a total of forty (40) hours per week.

62.     From in or around June 2014 through in or around July 2014, Plaintiff King was paid forty dollars ($40) per shift for his work.  From in or around July 2014 through in or around October 2014, Plaintiff King was paid seven dollars ($7) per hour for his work.  Although Plaintiff King was told by managers that he would be paid ten dollars ($10) per hour for all hours worked past 12:00 am as a porter, Plaintiff King was paid his regular rate for hours worked

during the 10:00 pm to 6:00 am shift in October 2014.  In addition to his regular wages, Plaintiff

King typically earned tips from customers, but he and the other restaurant employees were

required to work for well-below minimum wage.

63.    Throughout the King Employment Period, Plaintiff King received his wages in

check, excepting one (1) week in which Plaintiff King received his wages in cash in a plain white

envelope.  Throughout the King Employment Period, Plaintiff King was paid every Tuesday by

either "Carl" or Mike Brown.

64.    Throughout his employment, Plaintiff King only received forty dollars ($40) per

shift or seven dollars ($7) per hour, notwithstanding the fact that he frequently worked over ten

(10) hours per day.

65.    Throughout his employment, Plaintiff King received his regular hourly rate for all

hours worked in excess of forty (40) hours per week.  King did not receive overtime premiums of

one and one-half (1.5) times his hourly rate for hours worked in excess of forty (40) hours per

week.

66.    Plaintiff King did not receive a proper wage statement with each payment of

wages containing his regular hourly rate of pay; his overtime rate of pay; the number of regular

hours worked, and the number of overtime hours worked.

67.    Defendants did not provide Plaintiff King with a wage notice on his date of hire

and/or February 1 of each year.

68.    On at least three occasions, Plaintiff King complained to managers "Carl" and

Mike Brown about not receiving overtime pay and minimum wage.  Carl and Brown responded

by telling Plaintiff King that they would fix the problem and to give them some time—despite

repeated attempts to reach out to management, Plaintiff King was never properly compensated

for all hours worked.

69.    Although Plaintiff King was permitted to take a thirty (30) minute uninterrupted lunch break throughout the duration of his employment, he was occasionally denied a full break because he was interrupted to perform others tasks.

70.    Throughout the duration of the King Employment Period, Plaintiff King was typically required to stay approximately sixty (60) minutes past his scheduled shift time to report his deliveries to management, wash dishes, take out the trash, clean the restrooms and clean the sidewalk outside of the restaurant.  From in or around July 2014 through in or around October 2014, Plaintiff King was required to arrive approximately thirty (30) minutes prior to the start of his scheduled shift approximately three to four (3-4) times per week to prepare for his upcoming shift, take out garbage, wash dishes, fill ice trays and sweep the restaurant floors.  Although Plaintiff King clocked in and out correctly each day, approximately five (5) hours were missing from his payment every week.  Upon information and belief, Defendants disregarded hours logged by Plaintiff King and only compensated him for his scheduled shifts.

71.    Throughout the duration of Plaintiffs' employment, Defendants kept track of employee hours through a P.O.S. system.

72.    Although Plaintiffs typically accurately recorded their arrival and departure times throughout the duration of their respective employment periods, Defendants would typically only pay Plaintiffs for time worked during their scheduled shifts.

73.    Defendants required Plaintiffs and Class Members to purchase three (3) uniform logo tee-shirts for which Defendants deducted the cost from Plaintiffs' and Class Members' wages. Defendants also required that Plaintiffs and the Class Members maintain their uniforms, but Defendants did not provide Plaintiffs and Class Members uniform maintenance pay.

17

74.    Notwithstanding that Plaintiffs and other Class Members frequently worked more than ten (10) hours in a given day, Defendants failed to pay them spread-of-hours premiums equal to an additional hour of minimum wage for each day working in excess of ten (10) in a given day.  Defendants' failure to pay Plaintiffs and the Class Members spread of hours premiums was a corporate policy that applied to all of Defendants' employees working shifts of more than ten (10) hours in one day and/or split shifts.

75.    Plaintiffs and the Class Members were all paid pursuant to the same corporate policies of Defendants, including failing to pay minimum wages and overtime premiums while failing to provide proper wage notices or wage statements.

76.    Defendants are unable to take the tip credit against the minimum wage because they failed to provide notice that they were taking the tip credit and failed to keep accurate records of the amount of gratuities earned to ensure that Plaintiffs and the Collective Action Members actually received the full minimum wage.

77.    Plaintiffs have spoken with numerous other employees of Defendants, who similarly worked in excess of forty (40) hours per week during the Class Period and were similarly paid substantially less than minimum wage for all hours worked and less than one and one-half (1.5) times the minimum wage for hours worked over forty (40) hours in a week. Defendants' failure to pay Plaintiffs and the Class Members overtime compensation of one and one-half (1.5) times their regular hourly rate for hours over forty (40) each week was a corporate policy of Defendants, which applied to all of their hourly employees throughout the relevant period.

78.    Plaintiffs' work was performed in the normal course of Defendants' business and was integrated into Defendants' business.

18

79.    The work performed by Plaintiffs required little skill and no capital investment.

80.    Throughout the Class Period and, upon information and belief, continuing until today, Defendants have likewise employed other individuals like Plaintiffs in positions that require little skill and no capital investment. Such individuals were required to work for less than minimum wage and were not paid one and one-half (1.5) times their regular rate, at no less than minimum wage, when working in excess of forty (40) hours per week. Additionally, such individuals were not provided spread-of-hours premiums while working shifts in excess of ten (10) hours, nor were they provided with proper wage notices at hiring, by February 1 of each year, or on a weekly basis.

81.    As stated, the exact number of such similarly situated individuals is presently unknown but is believed to be well in excess of forty (40) individuals and can be ascertained through appropriate discovery.

82.    Upon information and belief, throughout the Class Period and continuing until today, Defendants failed to maintain accurate and sufficient time and payroll records or provide such records to employees.

83.    Upon information and belief, throughout the Class Period and continuing until today, Defendants failed to post or keep posted notices explaining the minimum wage and overtime pay rights provided by the FLSA or New York Labor Law.

## FIRST CAUSE OF ACTION
## FAIR LABOR STANDARDS ACT – UNPAID MINIMUM WAGE

84.    Plaintiffs, on behalf of themselves and the Collective Action Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

85.    By failing to pay minimum wage for all hours worked, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 206 and 215(a)(2).

86.    The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

87.    Defendants' failure to pay minimum wages for all hours worked caused Plaintiffs and the Collective Action Members to suffer loss of wages and interest thereon.  Therefore, Plaintiffs and the Collective Action Members are entitled to recover from Defendants their full unpaid minimum wages, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

## SECOND CAUSE OF ACTION
## FAIR LABOR STANDARDS ACT – UNPAID OVERTIME

88.    Plaintiffs, on behalf of themselves and the Collective Action Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

89.    By failing to pay overtime at a rate not less than one and one-half (1.5) times the regular rate of pay for work performed in excess of 40 hours per week, at no less than time and one-half the applicable minimum wage, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a)(2).

90.    The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

91.    Defendants' failure to pay overtime caused Plaintiffs and the Collective Action Members to suffer loss of wages and interest thereon.  Plaintiffs and the Collective Action

Members are entitled to recover from Defendants their unpaid overtime premium compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

## THIRD CAUSE OF ACTION
## NEW YORK LABOR LAW – UNPAID MINIMUM WAGE

92.    Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

93.    Defendants willfully violated Plaintiffs' and Class Members' rights by failing to pay minimum wage for all hours worked, in violation of the NYLL and regulations promulgated thereunder.

94.    Defendants' failure to pay minimum wage for all hours worked caused Plaintiffs and the Class Members to suffer loss of wages and interest thereon.  Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid minimum wages, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

## FOURTH CAUSE OF ACTION
## NEW YORK LABOR LAW – UNPAID OVERTIME

95.    Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

96.    Defendants willfully violated Plaintiffs' and the Class Members' rights by failing to pay overtime compensation at a rate of not less than one and one-half (1.5) times the regular

rate of pay for hours worked in excess of forty (40) each week, in violation of the NYLL and regulations promulgated thereunder.

97.    Defendants' failure to pay overtime premium compensation caused Plaintiffs and the Class Members to suffer loss of wages and interest thereon.  Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid overtime compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

**FIFTH CAUSE OF ACTION**
**NEW YORK LABOR LAW – UNPAID SPREAD-OF-HOURS**

98.    Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

99.    Defendants willfully violated Plaintiffs' and the Class Members' rights by failing to pay compensation in an amount equal to one hour's pay at the relevant minimum wage in all instances where the Class Members worked either a split shift or more than ten (10) hours per day, in violation of the NYLL §§ 650, *et seq.*, and the regulations promulgated thereunder including N.Y. Comp. Code R. & Regs. tit. 12, §§ 137-1.7 (2010), 146-1.6 (2012).

100.    Defendants' failure to pay spread-of-hours compensation caused Plaintiffs and the Class Members to suffer loss of wages and interest thereon.  Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid spread-of-hours compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

## SIXTH CAUSE OF ACTION
## NEW YORK LABOR LAW – FAILURE TO PROVIDE WAGE NOTICE

101.    Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

102.    Defendants have willfully failed to supply Plaintiffs and the Class Members notice as required by Article 6, § 195, in English or in the language identified by Plaintiffs and the Class Members as their primary language, containing Plaintiffs' and Class Members' rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay, if applicable; the regular pay day designated by the employer in accordance with the NYLL, Article 6, § 191; the name of the employer; or any "doing business as" names used by the employer' the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

103.    Due to Defendants' violations of the NYLL, Plaintiffs and the Class Members are entitled to recover from Defendants fifty dollars ($50) per employee for each workweek that the violations occurred or continue to occur, up to a maximum of twenty-five hundred dollars ($2,500) per employee, as provided for by NYLL, Article 6, §§ 190, *et seq.*, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

## SEVENTH CAUSE OF ACTION
## NEW YORK LABOR LAW – FAILURE TO PROVIDE WAGE STATEMENT

104. Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

105. Defendants have willfully failed to supply Plaintiffs and Class Members with an accurate statement of wages as required by NYLL, Article 6, § 195, containing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

106. Due to Defendants' violations of the NYLL, Plaintiffs and the Class Members are entitled to recover from Defendants one hundred dollars ($100) per employee for each workweek that the violations occurred or continue to occur, up to a maximum of twenty-five hundred dollars ($2,500) per employee, as provided for by NYLL, Article 6, §§ 190 *et seq.*, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

## EIGHTH CAUSE OF ACTION
## NEW YORK LABOR LAW – UNIFORM VIOLATIONS

107. Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

108. Defendants willfully violated the rights of the Plaintiffs and the Class Members by failing to reimburse them for the purchase of their required uniforms, and by failing to

provide them with uniform maintenance pay, in violation of the NYLL §§ 650, *et seq.*, and the regulations promulgated thereunder, including N.Y. Comp. Code R. & Regs. tit. 12, §§ 137-1.8 (2009), 146-1.7 & 1.8 (2011).

109.    Defendants' uniform violations caused Plaintiffs and the Class Members to suffer loss of wages and interest thereon.  Plaintiffs and the Class Members are entitled to recover from Defendants the amount that Defendants failed to reimburse Plaintiffs and Class Members for the purchase of their uniforms and the amount that they failed to pay Plaintiffs and Class Members for the maintenance of such uniforms, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL § 663(I) *et al.*

## PRAYER FOR RELIEF

Wherefore, Plaintiffs, on behalf of themselves and all other similarly situated Collective and Class Action Members, respectfully request that this Court grant the following relief:

a.    Designation of this action as a collective action on behalf of the Collective Action Members and ordering the prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b) and appointing Plaintiffs and their counsel to represent the Collective Action Members;

b.    Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (b)(3) on behalf of the Class Members and appointing Plaintiffs and their counsel to represent the Class;

c.    An order tolling the statute of limitations;

d.    A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

e.    An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with Defendants, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

f.    An award of compensatory damages as a result of Defendants' failure to pay minimum wage and overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

g.    An award of liquidated and/or punitive damages as a result of the Defendants' willful failure to pay minimum wages and overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

h.    An award of actual and liquidated damages for the non-payment of spread-of-hours pay for each split shift and/or shift worked in New York in excess of ten (10) hours;

i.    An award of damages arising out of the improper uniform expense deductions and unpaid uniform maintenance costs under the NYLL;

j.    Fifty dollars ($50) per Plaintiff and each of the Class Members for each workweek that the violations of NYLL, Article 6 § 195 occurred or continue to occur, up to a maximum of twenty-five hundred dollars ($2,500) per Plaintiff and each of the Class Members as provided for by NYLL, Article 6 § 198(1)-b;

k.      One hundred dollars ($100) per Plaintiff and each of the Class Members for each

workweek that the violations of NYLL, Article 6 § 195 occurred or continue to

occur, up to a maximum of twenty-five hundred dollars ($2,500) per Plaintiff and

each of the Class Members as provided for by NYLL, Article 6 § 198(1)-d;

l.      An award of prejudgment and post-judgment interest;

m.      An award of costs and expenses of this action together with reasonable attorneys'

and expert fees; and

n.      Such other and further relief as this Court deems just and proper.

### DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial

by jury on all questions of fact raised by the complaint.


Dated: New York, New York
       January 26, 2015

                                    PELTON & ASSOCIATES PC


                                    By: _____
                                    Brent E. Pelton (BP 1055)
                                    Taylor B. Graham (TG 9607)
                                    111 Broadway, Suite 1503
                                    New York, New York 10006
                                    Telephone: (212) 385-9700
                                    Facsimile: (212) 385-0800

                                    *Attorneys for Plaintiffs, the FLSA Collective
                                    and Class*


27

January 5, 2015

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of Ottomanelli Brothers and/or Ottos Wines & Burger Bar and/or their respective owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me overtime wages and minimum wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being **named as the representative plaintiff** in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit. I understand that I will be represented by Pelton & Associates PC without prepayment of costs or attorneys' fees. I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first. I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf. I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.

_Travis King_          _1-6-14_          _Travis King_
Signature                 Date                    Printed Name

December 29, 2014

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of Ottomanelli Brothers and/or Ottos Wines & Burger Bar and/or their respective owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me overtime wages and minimum wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being **named as the representative plaintiff** in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit. I understand that I will be represented by Pelton & Associates PC without prepayment of costs or attorneys' fees. I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first. I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf. I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.


_Ryan Diaz_
Signature

12/30/2014
Date

_Ryan Diaz_
Printed Name

January 9, 2015

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of Ottomanelli Brothers and/or Ottos Wines & Burger Bar and/or their respective owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me overtime wages and minimum wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being **named as the representative plaintiff** in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit. I understand that I will be represented by Pelton & Associates PC without prepayment of costs or attorneys' fees. I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first. I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf. I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.

_Anthony Fernandez_        1/9/15         Anthony Fernandez
Signature                  Date           Printed Name